WILLIS *v.* HEIGHWAY.

1. STATUTES—DELINQUENT TAXES.—The tax act of 1886 to raise supplies for the fiscal year of 1886-7, limited the time for the payment of taxes to December 15, 1887, prohibited an extension of time beyond that date, directed a sale of delinquent lands by the county treasurer, and regulated the time and manner of sale. By act No. 433, of December 24, 1887, the time for paying these taxes was extended to January 11, 1888, and the contrary provision in the act of 1886 was repealed. By act No. 429, also passed December 24, 1887, changes were made in the manner of enforcing collection of delinquent taxes, the sheriff was made the selling officer, and all inconsistent provisions of law were repealed. *Held,* that land delinquent for non-payment of the taxes of 1886-7 was properly sold under act No. 429, and the sheriff's deed to the purchaser at such sale conveyed a good *prima facie* title.

2. IBID.—IBID.—The provision in the act of 1886, prohibiting an extension of time, did not prevent a subsequent legislature from granting such extension, but was probably intended as a restraint only upon the comptroller general.

3. IBID.—IBID.—OBLIGATION OF CONTRACTS.—The remedy for the enforcement of the payment of taxes, existing at the time of the levy, even if the obligation to pay taxes rests in contract, may be changed by subsequent legislation, as the remedy provided by law for the enforcement of a contract may be changed, if not thereby destroyed or so changed as to materially affect the value of the obligation created by the contract.

Before FRASER, J., Beaufort, February, 1893.

Action by E. Willis and Loula S. Brown against A. E. Heighway for recovery of real property.

*Messrs. Thomas Talbird* and *W. J. Verdier*, for appellants.

*Messrs. Elliott & Townsend*, contra.

March 2, 1894.   The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER.   This was an action for the recovery of real property, situate in the County of Beaufort. The facts were undisputed, and are, substantially, as follows: The real estate in controversy was offered for sale by the sheriff under a warrant of execution commanding him to levy and sell the property of the plaintiffs to enforce the payment of taxes due by them for the fiscal year commencing the 1st day of November, 1886.   Under this warrant or execution the sheriff levied on the land in controversy, and offered the same for sale on the 5th day of June, 1888, when it was bid off by the defendant, who received titles from the sheriff for said land.   "On the 5th of June, 1890, the plaintiffs filed their summons and complaint in the office of the clerk of the Court of Common Pleas for Beaufort County, and obtained an order for the service of the summons by publication upon the defendant, at his residence in Tennessee, and the defendant appeared on the 24th day of June, 1890.   The summons was not delivered to the sheriff of this county for service upon the defendant."   The defendant set up in his answer two defences: 1st, that he had

acquired title to the land under the sale made by the sheriff; 2d, that the sale for taxes was made more than two years before the commencement of this action.

The case came on for trial before his honor, Judge Fraser, who held that the defendant had acquired title under the sale above referred to, and also that the action was not commenced within the time prescribed by law. Judgment was accordingly entered in favor of the defendant, and from that judgment plaintiffs appeal upon the several grounds set out in the record, which substantially raise but two questions: 1st. Whether the Circuit Judge erred in holding that the defendant acquired a valid title under the sale made by the sheriff for non-payment of taxes? 2d. If so, whether the present action was commenced within the time prescribed by law?

By the act of 1887, approved 24th December, 1887 (19 Stat., 862), fundamental changes were made in the manner of enforcing the payment of taxes. In the first section that act provides: "That hereafter, immediately upon the expiration of the time allowed by law for the payment of taxes in any year, the county treasurer of each county shall, and is hereby authorized and directed, to issue, in the name of the State, a warrant or execution, in duplicate, against each defaulting taxpayer in his county, signed by him in his official capacity, directed to the sheriff of his county or his lawful deputy, requiring and commanding him to levy the same by distress and sale of so much of the defaulting taxpayer's estate, real or personal, or both, as may be sufficient to satisfy the taxes," &c., going on to prescribe the requisites of such warrant or execution, and the fees chargeable thereon, as to which there is no controversy in the present case. The second section of the act directs the sheriff to advertise and sell so much of the defaulting taxpayer's estate, real or personal, or both, as may be necessary to satisfy such execution, make titles to the purchaser, upon his compliance with the terms of the sale, and that the title so made shall be held and taken as *prima facie* evidence of good title. And it further provides that no action for the recovery of the land so sold by the sheriff shall be maintainable unless brought within two years from the date of said

sale. By the seventh section of the act, all acts and parts of acts inconsistent with the provisions of this act are repealed, and it is expressly declared that this act shall take effect from and immediately after its approval.

It is obvious, therefore, that if this act which we have just been considering is applicable to the present case, there was no error on the part of the Circuit Judge in the view which he took of the first question presented by this appeal. It is contended, however, that the act of 1887, above referred to, cannot be applied to the present case, because the taxes, for the non-payment of which the sale was made by the sheriff, were taxes levied for the fiscal year commencing on the 1st of November, 1886, by the act to raise supplies for that fiscal year, and that by the 8th section of that act (19 Stat., 647,) the time allowed by law for the payment of such taxes expired on the 15th day of December, 1887, nine days before the passage of the act of 1887, hereinbefore referred to, and that in the proviso to section 8 of the said act of 1886, it was expressly declared: "That there shall be no extension of the time for collecting said taxes beyond the date herein fixed." It appears, however, that on the same day, 24th of December, 1887, on which the act of 1887, above referred to, was passed, the legislature passed another act, by the 8th section of which (19 Stat., at page 883,) the proviso to section 8 of the act of 1886, above quoted, was expressly repealed, "and the time for the collection of taxes for the fiscal year commencing November 1st, 1886, is hereby extended to the 11th day of January, A. D. 1888, except as to Darlington County." (Inasmuch as these two acts of 1887 were both passed on the same day, it will be best to distinguish them by their numbers, the one first referred to being No. 429, while the one last referred to is No. 433.)

The argument on the part of the appellants seems to be that to apply the act of 1887, No. 429, to this case would be giving that act a retroactive effect, contrary to the well settled rule upon that subject. We do not think that this argument is well founded. As we understand it, the time for the payment of the taxes in this case did not expire until the 11th of January, 1888, by reason of the express provisions of the act of 1887, No. 433,

fixing that as the day up to which the taxes for the fiscal year commencing 1st of November, 1886, might be paid without penalty; and as that day was subsequent to the passage of the act of 1887, No. 429, we do not see how such act can be regarded as retroactive when applied to this case. It is true, that plaintiffs were in default in the failure to pay their taxes on 15th of December, 1887, and thereby laid themselves liable to be proceeded against under the law as it then stood, which, however, under the provisions of section 10 of the act of 1886 (19 Stat., at page 648,) could not have been enforced by a sale of their lands until after the 2d of January, 1888; but it does not appear that any proceedings were instituted or any steps taken during the short period of nine days intervening between the day of such default and the 24th day of the same month, when the legislature saw fit to condone such default, and allow further time until the 11th of January, 1888, to the defaulting taxpayer to pay his taxes. But when that day arrived, and the plaintiffs again made default, we see no reason why the act of 1887, No. 429, cannot be applied to the case. Indeed, if it cannot be so applied, it is somewhat difficult to conceive what mode of enforcing the payment of the taxes could be resorted to, for it is very obvious that all the laws prescribing other modes of enforcing the payment of taxes had been repealed, and unless the remedy afforded by the act of 1887, No. 429, could be resorted to, then the State would be left without remedy.

The idea, that the legislature could not, by the act of 1887, No. 433, allow further time for the payment of taxes levied for the fiscal year commencing 1st of November, 1886, beyond the time allowed by the act levying such taxes, cannot be entertained, for that would practically amount to saying that a creditor could not extend the time for payment of a debt due him. Indeed, we suppose that the true intent and meaning of the proviso to section 8 of the act of 1886, above referred to, was that the time should not be extended *by the comptroller general,* for it can scarcely be supposed that the legislature, by that proviso, intended to do what it had no right to do—tie the hands of a subsequent legislature.

The position taken by counsel for appellants, that the reme-

dies for the enforcement of the payment of taxes, existing at the time of the levy of the taxes, or, at least, at the time 3 default occurs, cannot be subsequently changed by the legislature, upon the principle, that the remedy existing at the time a contract is made enters into and forms a part of such contract, cannot be sustained. In the first place, it is more than doubtful whether the obligation to pay taxes rests upon contract. But even if it does, it is not true that *no* change can be made in the remedy provided by law for the enforcement of a contract at the time the contract is entered into. It would be much more correct to say that the remedy existing at the time cannot be destroyed or taken away, or so changed as to materially affect the value of the obligation created by the contract. See *State* v. *Carew*, 13 Rich., 498, and *Wood* v. *Wood*, 14 *Id.*, 148, for an elaborate discussion of this subject; also, *Ware* v. *Miller*, 9 S. C., at page 20, especially the citation from Cooley on Cons. Lim. But without pursuing this subject, we think it clear that there is nothing to forbid the legislature from making such a change in the mode of enforcing the payment of taxes, as appears to have been made in the present case. It seems to us that the view which we have taken of the first question is fully sustained by the case of *Roddy* v. *Purdy*, 10 S. C., 137.

Under this view of the case, the second question can scarcely arise, and need not, necessarily, be considered; for if, as we have seen, the defendant acquired a good title to the land in controversy, it matters not whether the plaintiffs' action was commenced in time or not.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.